UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA )
                         )
v.                       )
                         )      CRIMINAL NO. 01-10261-RWZ
                         )
CHEPIEL SANCHEZ          )

## SENTENCING MEMORANDUM OF DEFENDANT CHEPIEL SANCHEZ

The Defendant Chepiel Sanchez submits the following memorandum in opposition to the Government's position (adopted by Probation) concerning the calculation of Base Offense Level to include alleged "relevant conduct" and the assignment of a four level adjustment for his role in the offense.

### Prior Proceedings

On or about September 12, 2002, a Federal Grand Jury returned an indictment against Chepiel Sanchez for conspiracy to distribute heroin (21 U.S.C. §846) (count 1), distribution of heroin and/or aiding and abetting the distribution of heroin [21 U.S.C. §841 (a)(1); 18 U.S.C. §2](counts 2-10) and forfeiture of assets (21 U.S.C. §853). The Grand Jury further alleged that the conspiracy involved more than 100 grams of heroin.

The defendant was arraigned before Magistrate Judge Dein on September 25, 2002.  On January 9, 2003, the Defendant appeared before Judge Rya W. Zobel and pleaded guilty to all ten counts of the indictment. Sentencing was initially scheduled for April 3, 2003, but was subsequently rescheduled and consolidated with Co-defendants Jason Anderson and Michael Reyes for hearing on June 13, 2003.

## Factual Background

The Defendant was indicted substantially on the basis of nine drug transactions recorded by a confidential informant, commencing on February 21, 2002, and concluding with his arrest and the search of his premises on September 13, 2003.  The total quantity of heroin transacted in all the substantive counts of the indictment was 99.6 grams (see page 22 of PSR).  In addition, the Defendant admitted at his plea hearing that the conspiracy in which he participated from February, 2002, to September 12, 2002, involved at least 100 grams of heroin (a consensually recorded transaction of 39.5 grams on September 12, 2002, and the seizure of 86.5 grams from the Defendant's home and

common basement on September 13, 2003, were not charged in substantive counts) (see pages 22-23 of PSR).

Subsequent to the Defendant's plea hearing, the Government submitted a memorandum to the Probation Office, adopted substantially by Probation, seeking to enhance Defendant's Base Offense Level by the inclusion of uncharged "relevant conduct" consisting of alleged heroin quantities in excess of 3,250.00 grams, alleged cocaine quantities of 2000 grams, and alleged ecstasy quantities of 649.5 grams (see pages 23-24 of PSR). The result was to increase the Base Offense Level from Level 26 based upon the 100-400 gram quantity of heroin to which Defendant pleaded guilty to Level 34 (see page 24 of PSR).

## Argument

I. **The Defendant Should Not Be Held Responsible For Uncharged Drug Quantities Which Have Not Been Proven By Reliable Evidence To Be Part Of The Same Course Of Conduct Or Common Scheme Or Plan As The Offense Of Conviction.**

The Sentencing Guidelines provide for the inclusion of drug quantities from uncharged transactions in the calculation of Defendant's Base Offense Level, but only

where such transactions are "part of the same course of conduct or common scheme or plan as the offense of conviction".  U.S.S.G. §1B1.3(a)(2).  In this case, the Government inappropriately seeks to hold Defendant responsible for quantities of drugs, including heroin, ecstasy, and cocaine which were neither charged, nor occurred as part of the conspiracy alleged, nor during the same course of conduct.

Although "closely related", the concepts of "common scheme or plan" and "same course of conduct" are separate and distinct.  Id., Commentary, Application Note: (9).  "For two or more offenses to constitute part of a common scheme or plan, they must be substantially [emphasis added] connected to each other by at least one common factor, such as common victims, common purpose, or similar modus operandi.... Offenses that do not qualify as part of a common scheme or plan may nonetheless qualify as part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses."  Id.  The Sentencing Commission has

delineated the following factors to consider: "the degree of similarity of the offenses, the regularity (repetition) of the offenses, and the time interval between the offenses.  When one of [these] factors is absent, a stronger presence of at least one of the other factors is required."  Id.

The First Circuit has suggested that the phrase "common scheme or plan" is analogous to the term "conspiracy", i.e., the uncharged conduct must be part of the same conspiracy as the charged conduct.  United States v. Batista, 239 F. 3d 16, 22 (1st Cir. 2001). The phrase "same course of conduct" has been defined as the "unilateral equivalent [of a] conspiracy".  Id. While the drug quantity attributable to Defendant is thus not limited to the drugs involved in the offenses of convictions, "[s]ection 1B1.3(a)(2) has its limits...and 'not every drug transaction undertaken by every drug trafficker is necessarily linked in a meaningful sense.'"  Id., quoting from United States v. Sklar, 920 F. 2d 107, 111 (1st Cir. 1990).  "To bring uncharged conduct into play, the government must establish a sufficient nexus between the conduct and

the offense of conviction.... The government...[has the] burden to prove the nexus by a preponderance of the evidence." United States v. Sklar, supra at 110.

### "Drug Debts"

The Government and Probation seek to hold Defendant accountable for 1,120 grams of heroin based upon references to drug debts made by the Defendant on various recorded conversations (see Government's Memorandum at pages 39-409; PSR at page 23). The inclusion of heroin amounts derived from drug debts is not appropriate where the evidence fails to establish that the alleged debts were attributable to relevant conduct, i.e., conduct which was part of the same plan or scheme or course of conduct as the offense of conviction.

In this case, the tape-recorded conversations relied upon by the Government do not indicate that the alleged debs were recently incurred so as to permit an inference of relevant conduct.[1] Compare, United States

_____

[1] In fact, the tape of the April 25, 2002, conversation indicates that the alleged $122,00.00 debt cited by the Government and relied upon by Probation was "owed some guy last year" (see page 3 of Exhibit 11 submitted with the Government's Sentencing Memorandum).

v. Batista, 239 F. 3d 16, 20-21 (1st Cir. 2001)
(district court properly included as relevant conduct
drug transactions referenced in ledgers, all occurring
in the immediately preceding months); United States v.
Tabares, 951 F. 2d 405, 410 (1st Cir. 1991) (district
court's finding that notebook documenting recent
cocaine sales provided basis for enhancement of base
offense level was not clearly erroneous).  Moreover,
while the Government and Probation have assumed in
their calculations that the alleged debts were for
heroin purchases, the evidence does not warrant a
finding that the Defendant's debt derived from heroin
purchases as opposed to cocaine, ecstasy or marijuana
purchases, all of which, according to other evidence
the Government has proffered, the Defendant was
involved in (see PSR, pages 15-16, 18).  Compare,
United States v. Sepulveda, 102 F. 3d 1313, 1318-1319
(1st Cir. 1996) (no "clear error" where district court
counted "crack cocaine" as relevant conduct based upon
money seized at arrest where evidence suggested that
Defendant also sold powder cocaine; however, "district

court could certainly have taken a different view of the matter").

There is, finally, insufficient reliable evidence of common scheme or plan or course of conduct to overcome the absence of evidence demonstrating temporal proximity.  See <u>United States v. Hill</u>, 79 F. 3d 1477, 1484 (6th Cir. 1996) ("the guidelines prescribe a sliding scale approach, i.e., where one of the factors is weak or absent, there must be a substantially stronger showing of at least one other factor").  Here, there is no evidence to support a finding that the drug debts derived from transactions involving the same co-conspirators or the same customers as the offense of conviction.  See <u>United States v. Williams</u>, 10 F. 3d 910, 913-914 (1st Cir. 1993) (finding of relevant conduct warranted, where prior misconduct involved same victim, same method of operation, and same principals as offense of conviction); <u>United States v. Montoya</u>, 952 F. 2d 226, 229 (8th Cir. 1991) (where prior marijuana distribution involved different conspirators and drugs different from offense of conviction, district court erred in permitting unrelated drug

transactions to be combined for sentencing purposes);
compare, United States v. White, 888 F. 2d 490, 500 (7th
Cir. 1989) (where customers and co-conspirators
differed, district court was not warranted in including
prior cocaine transactions as relevant conduct).

*Possession of $150,000.00 on 11/10/00*

The Government and Probation also seek to include
as relevant conduct 2,000 grams of heroin based upon
alleged observations of an unidentified informant of
$150,000.00 (with which Sanchez allegedly intended to
purchase 2 kilos of heroin and 2 kilos of cocaine) in
November, 2000 (see Government's Sentencing Memorandum
at page 32; PSR at page 23).[2]  This quantity of drugs
ought not to be included because, as previously argued
in connection with the alleged drug debts, the
government has not shown a sufficient nexus in time,
participants, or modus operandi, to prove common scheme
or plan or same course of conduct.  The alleged
transaction took place fifteen months prior to the
commencement of the conspiracy alleged in the

---

[2] The PSR incorrectly states that Velasquez's testimony provided a basis for the inclusion of this amount.  In fact, an unidentified informant provided this information (see Exhibit 22 submitted by the Government).

indictment to which the Defendant pleaded guilty.  None
of the participants were the same, neither the seller
(Sanchez allegedly sought to buy the drugs from someone
in Texas whereas the source of the heroin alleged in
the indictment was New York), nor the buyer (the
informant who purchased the drugs from Sanchez in 2002
was not active in 2000), nor the co-conspirators.  The
only nexus between the alleged transaction in November,
2000, and the offense of conviction is the nature of
the drug, and this connection is insufficient for a
finding of relevant conduct.  United States v. White,
supra at 500.

Moreover, it is questionable whether this Court
should, or could, rely upon a police report containing
double hearsay including an unidentified confidential
informant in making its determination of relevant
conduct.[3]  Compare, United States v. Sklar, 920 F. 2d
107, 110 (1st Cir. 1990) (court may consider only
dependable information).  Neither counsel nor the Court

---

[3] The Government's submission of the report itself as an Exhibit constitutes triple hearsay.  Trooper Hughes reports that Trooper Horgan was provided with the information by a confidential informant, C-I.

have the benefit of testing the veracity of the informant by reference to his background, biases, or motivation, and thus the court has no basis on which to evaluate the "reliability" of the information.

### LaBoy Transactions

The Government and Probation add 150 grams of heroin to the Defendant's total Base Offense Level based upon alleged transactions with Javier LaBoy (see Government's Sentencing Memorandum at pages 33-34; PSR at page 23). For reasons previously expressed hereinabove, these alleged transactions were not "part of the same course of conduct or common scheme or plan as the offense of conviction", and should thus not be included as relevant conduct. U.S.S.G. §1B1.3(a)(2). The alleged transactions occurred during the spring or summer of 2001 (eight months prior to the commencement of this conspiracy), involved a different customer, and different conspirators. Again, the only similarity providing the nexus required for relevant conduct is that the same drug, i.e., heroin, was involved.

## Elton Rogers Transactions

The Government and Probation add 19.8 grams of heroin as relevant conduct, based upon an interview with a confidential informant and an unnamed source concerning alleged heroin transactions in July of 2001 (see Government's Sentencing Memorandum at page 32 and PSR at page 23).  For the reasons expressed hereinabove with respect to the LaBoy transactions, the alleged Rogers transactions should not be included as relevant conduct where they do not involve the same course of conduct or a common scheme or plan (different time frame, different conspirators, different customer, no similar modus operandi).

## Cocaine

The Probation Department would hold Defendant responsible for 2000 grams of cocaine as relevant conduct as a result of the information provided by the same confidential informant referred to in Trooper Hughes' report (see Exhibit 22 submitted by the Government; PSR at pages 23-24).  For the reasons

expressed hereinabove in connection with the heroin quantities referred to in said report, the Defendant submits that the cocaine amounts referred to should not be included as relevant conduct. In this instance, there is not even the similarity of drugs to evidence a course of conduct or common scheme or plan.

### Ecstasy

Probation also seeks to hold Defendant accountable for 649.5 grams of ecstasy as relevant conduct (see PSR at page 24). For reasons previously expressed, i.e., different drugs, different customers, different conspirators, these amounts should not be included because they were not part of the same scheme or plan or course of conduct as the offense of conviction.

## II. The Defendant Should Not Be Given A Four Level Enhancement For Role In The Offense Where The Criminal Activity For Which He Was Convicted Neither Involved Five Or More Participants Nor Was Otherwise Extensive.

The Government and Probation apply a four level enhancement for Sanchez's alleged role in the offense as the "organizer or leader of a criminal activity that involved five or more participants or was otherwise

13

extensive...."  U.S.S.G. §3B1.1(a) (see Governments
Sentencing Memorandum at pages 48-50, PSR at pages 24).
The Defendant submits that a four level adjustment is
not warranted because there were less than five
participants involved in the offense of conviction, and
the conspiracy involving Co-defendants Reyes and
Anderson was not "otherwise extensive".  Id.

The PSR predicates its finding of five or more
participants on the evidence that the Defendant
directed Co-defendants Reyes and Anderson, and the
belief that others, including Telia Lamb, Use Carrera,
Javier LaBoy, and Elton Rogers, participated as well.
Telia Lamb, however, cannot be considered a
"participant", because it has not been shown that she
is "a person who is criminally responsible for the
commission of the offense."  Id., Commentary,
Application Note (1).  Neither Carrera, nor LaBoy, nor
Rogers, even assuming their involvement as participants
in prior offenses, were participants in the offense of
conviction or relevant conduct.  The Sentencing
Guidelines do not provide for a role adjustment based

14

upon the accumulation of participants from prior
uncharged criminal conduct, unless such conduct
constitutes "relevant conduct".

With respect to the criminal activity of Defendant,
there is no evidence that the offense was "otherwise
extensive". The Defendant sold quantities of heroin to
the confidential informant, and was assisted in that
enterprise on limited occasions by Co-defendants Reyes
and Anderson. The Defendant should thus not be given
an enhancement for his role in the offense which
exceeds a 2 level adjustment as a supervisor or manager
of criminal activity. See U.S.S.G. §3B1.1(c).

III. **The Court Should Consider A Downward Departure
Where The Enhancements Sought By The Government
Based Upon Relevant Conduct Drastically Affect The
Length Of Defendant's Sentence.**

The Defendant pleaded guilty to a conspiracy and
substantive counts of heroin distribution involving
quantities of heroin between 100 and 400 grams.
Without relevant conduct, his Base Offense Level would
have been Level 26 and his Total Offense Level would
have been Level 27 (assuming a 2 point upward

adjustment for role).  His resulting guideline sentence range would have been 100-125 months (Criminal History Category IV).

After Defendant pleaded guilty, the Government submitted a memorandum seeking to include relevant conduct, not only in the base offense computation, but also in the role adjustment calculation.  The result, adopted by Probation, was to boost the guideline sentencing range to 292-365 months.

Where relevant conduct results in a guideline range grossly disportionate to that provided for the offenses of conviction, the court should consider a downward departure.  United States v. Vizcaino, 202 F.3d 345, 347-348 (D.C. Cir. 2000); United States v. Lombard, 72 F.3d 170, 183-187 (1st Cir. 1995); United States v. Concepcion, 983 F.2d 369, 385-389 (2d Cir. 1992).  In this case a downward departure is appropriate so that the sentence enhancements do not become the "tail which wags the dog of the substantive offense."  United States v. Lombard, supra at 176.

16

## IV. Conclusion

For the reasons set forth hereinabove, Defendant respectfully requests that the Court reject the inclusion of relevant conduct included in the Presentence Report, as well as the role adjustment predicated on such conduct. Without such enhancements, the Court should find a sentencing guideline range of 100-125 months, and sentence Defendant accordingly.

In the event that the Court adopts the Governments and Probation's recommendations of a sentencing guideline range of 292-360 months, the Defendant requests that the Court depart downward to a fair and just sentence.

DEFENDANT
By his attorney

John F. Palmer
Law Office of John F. Palmer
24 School Street, 8th Floor
Boston, MA 02108
(617)723-7010
BBO# 387980

Dated:   June 11, 2003

## CERTIFICATE OF SERVICE

I, John F. Palmer, certify that I sent copies of the foregoing Motion For Leave To File Late Sentencing Memorandum and Sentencing Memorandum Of Defendant Chepiel Sanchez, by facsimile and first class mail, postage prepaid, to the following:

John Wortmann, A.U.S.A.
U.S. Attorney's Office
One Courthouse Way
Boston, MA 02210

John F. Palmer

Dated: June 11, 2003