UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA      )
                              )
          v.                  ) Criminal No. 02-10261-RWZ
                              )
                              )
CHEPIEL SANCHEZ               )

## GOVERNMENT'S MEMORANDUM RE: BLAKELY ISSUES RAISED DURING THE OCTOBER 28, 2004 STATUS CONFERENCE

### INTRODUCTION

On September 12, 2002, a grand jury in this district returned a ten-count indictment against Chepiel Sanchez and two compatriots.[1]  The grand jury alleged that Sanchez and his co-defendants had each conspired to distribute at least 100 grams of heroin and that Sanchez had distributed (or aided and abetted the distribution of)  heroin on nine separate dates.[2]  Sanchez was named in (and ultimately pled guilty to) each and every one of the 10 drug charges brought against him.

---

[1]  Michael Reyes and Jason Anderson.

[2]  The only instance in which Sanchez merely aided and abetted the distribution of heroin took place on May 17, 2002.  See Indictment, Count 9.  On that date, the CW called Sanchez and requested heroin.  Sanchez told the CW to go to his house and that he would send "Mike." In fact, "Mike" was co-defendant Michael Reyes.  Reyes stated on tape that he worked for Sanchez and proceeded to sell the CW 40 grams of Sanchez' heroin.  See PSR, ¶¶50-56.  No objections were raised to these facts as alleged in the Offense Conduct section of the PSR.

The indictment resulted from a lengthy investigation of drug trafficking and other criminal activities by members and associates of the Immortal Outlaw Street Gang ("the Outlaws") of Lawrence, Massachusetts.[3]  Sanchez was alleged to be one of the leaders of the Outlaws and one of its most active drug traffickers.  PSR, ¶8.

Between February 21, 2002 and September 10, 2002, a cooperating witness working for the FBI ("the CW") made 9 controlled purchases of heroin from Sanchez or his co-defendants.[4] PSR at ¶¶7-8.   More heroin, firearms, ammunition, and drug processing equipment were also seized from Sanchez' home on September 13, 2002 pursuant to a search warrant issued by this Court. PSR, ¶¶69-70.  In all,

---

[3] At Sanchez' Rule 11 hearing, the government described what the evidnce would show regarding Sanchez' involvement (and use of) his co-defendants in his heroin trafficking.  That evidence included statements by Reyes recorded on May 17, 2002 that he worked for Sanchez and that Sanchez paid him for that work.  PSR, ¶54.  Those statements were made after the CW spoke to Sanchez, was told to go to Sanchez' house to do the deal, and then met Michael Reyes.  Plea Tr. At 22.   Sanchez admitted that he had a phone conversation with the CW on that date, that Reyes went to Sanchez' house, and that he was involved in selling heroin with others.  Id. at 25, 30.

[4] All of the drug purchases (which were of amounts between 2 and 40 grams of heroin and also included another sale of ecstasy) were made in Haverhill at Sanchez' house.  All of the purchases (and most of the conversations and negotiations leading up to the purchases) were consensually recorded.  The CW also wore transmitters during most of the purchases.  As set forth below, much of the drug weight in the case is based on admissions made by Sanchez during recorded conversations about the scope of his drug trafficking.  PSR, ¶¶2-5

more than 200 grams of heroin were either purchased or seized from Sanchez.  PSR, ¶86.

At sentencing, the government established that these sales and seizures were only a small part of Sanchez' trafficking.  Throughout the investigation, Sanchez made striking admissions on tape about the scope of his drug trafficking which involved kilogram levels of heroin and drug debts well in excess of $100,000.[5]  In addition, Sanchez made other sales not included in the indictment. PSR, ¶¶61-68.   All of this information was buttressed by reams of historical data from various sources confirming Sanchez' role as a leading supplier of heroin in the Lawrence/Haverhill area and fully justified the PSR's conclusion that Sanchez was responsible for 3-10 kilograms of heroin.  PSR, ¶¶72-79.  The government also asked the court to confirm the adjustments made in the PSR against Sanchez for role (4 levels) and for the guns he had (2 levels).   Sanchez PSR at ¶¶86, (drug weight), 87 (firearm enhancement), and 88 (role in the offense).

---

[5]  See, e.g., PSR, ¶¶30 (Sanchez boasts that once the CW's customers start using heroin they would come back for more); 40 (Sanchez warns CW about how easy it is to get hooked when bagging heroin and bragged that he had made a associate who he suspected of cooperating with the police strip at gunpoint); 45 (Sanchez brags that he has made 100's of thousands, talks about how to structure payments, and says he makes 1-3 thousand dollars per week in profits).

The matter originally came on for sentencing on June 13, 2003.  Although the defendant made general objections to the drug weight and role determinations contained in his PSR, he contested few the underlying operative facts.  <u>See</u> PSR, Addendum at pages 41-42 (defendant only asserted 3 objections including objections to inclusion of drugs he alleged were not relevant conduct and to determination that Sanchez' organization included 5 or more people or was otherwise extensive).  Among other things, Sanchez admitted that drugs and firearms were seized from his house at arrest, admitted that he was subject to at least a two-point role enhancement, and acknowledged recorded statements attributed to him concerning his drug debts, the tutorial he gave to the CW regarding heroin trafficking, and his abject indifference to the possible overdose of his customers.  He also never questioned the ability of this Court to adjust his offense level even though there were no role, firearm, or drug weight allegations beyond 100 grams of heroin in the indictment.  Based on the remarkable record before it (which included recorded statements by the defendant that "if [his heroin] kills 'em [his customers], it kills 'em, fuck 'em," <u>see</u> Sentencing Exhibit 9, the Court sentenced Sanchez to 210 months in prison. Sentencing Tr at 27.  This represented the

4

low end of what the Court concluded was Sanchez' guideline
range.[6] Id. at 26.

Sanchez thereafter appealed his sentence.  His
principal argument on appeal was that the PSR has
incorrectly attributed a significant component of the drug
weight allegations to a witness who had testified before the
grand jury rather than to another source. The only relief
that the defendant originally sought in the First Circuit
was an order directing the district court to exclude the two
kilograms of heroin from its drug calculations.

Although that issue was pointed out to Court by defense
counsel at sentencing before the Court made its drug weight
computations, see Sentencing Tr. at 5, statements made by
the Court at the conclusion of the Sentencing Hearing
suggested that it may not have appreciated the significance
the defendant attributed to this claim.  Given the length of
Sanchez' sentence and the possibility that the Court may
have misunderstood the extent of the grand jury testimony
attached to the government's Sentencing Memorandum, the

_____

[6]   The Court concluded that Sanchez was responsible for between 3 and 10
kilograms of heroin and that he should be assessed a 3 level role enhancement and a 2
level firearm enhancement.  This produced an adjusted offense level of 34 which, when
combined with Sanchez' CHC of IV, resulted in a guideline range of 210-262 months,
well within the applicable 40-year statutory maximum on the conspiracy count alone.
See Sentencing Tr. June 13, 2003 at 26-27.

government requested remand to enable the Court to ensure that the Court believed its sentence was the correct one.[7]

The government requested that the case be remanded on December 5, 2003.  Inexplicably, the case was not returned to the district court for nearly nine months.

In the interim, of course, the United States Supreme Court decided Blakely v. Washington, 124 S.Ct 2531 (2004). Several weeks later, the defendant moved to remand in order to assert a claim (for the first time) that the Court's sentence was unconstitutional because it exceeded the applicable "statutory maximum."

On September 17, 2004 the First Circuit remanded the case to this Court.  The mandate specifically stated that: "Our remand is without prejudice to any argument appellant may wish to advance in the district court pursuant to Blakely v. Washington, 124 S. Ct. 2531 (2004). We take no position at this time on whether Blakely applies to appellant.

## ISSUES PRESENTED

The principal issue presented by resentencing is the effect of Blakely v. Washington in the particular

---

[7]  As set forth above, the defendant's initial brief in the First Circuit made no claim that his constitutional rights had been violated by the 210 month sentence.

circumstances of this case.  Notwithstanding that Sanchez: (i) admitted his involvement with Reyes (who had stated that he worked for Sanchez); (ii) never objected to the appropriateness of the firearm enhancement or some role enhancement (either to Probation or at sentencing), and failed to contest the appropriateness of these enhancements on appeal (in which his only argument was that the Court improperly attributed two kilograms of heroin to Velasquez rather than another source), he claims that <u>Blakely</u> has transformed his "statutory maximum" from 40 years to 87 months and that this is the highest sentence the Court can impose.  See <u>Blakely</u>, 124 S.Ct at 2537 (Our precedents make clear, however, that the "statutory maximum" for <u>Apprendi</u> purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant").

Sanchez is wrong.  Although the government understands that this Court has previously concluded that <u>Blakely</u> applies to the Federal Sentencing Guidelines and does not render them unconstitutional, it respectfully requests that the Court reconsider its severability ruling for the reasons generally set forth in <u>United States v. Mueffleman</u>, 327 F.Supp.2d 79 (D. Mass. 2004).  If <u>Blakely</u> applies to the

7

Federal Sentencing Guidelines,[8] the government believes that this renders the Guidelines unconstitutional in this case and requires the Court to sentence the defendant under indeterminate pre-guideline principles.  See United States v. Croxford, 324 F.Supp.2d 1230, 1245 (D.Utah 2004) (court recognized the fundamental unfairness to the government inherent in the position taken by the Court here, that is, the adoption of the claim by defendants' that "what's mine is mine, what's yours is negotiable.").  See also United

---

[8] The government has found no better defense of the Federal Sentencing guidelines post-Blakely than that offered by Judge Hinkle in United States v. McKinney, 2004 WL 2315775, *11 (N.D. Fla 2004):

> Since the very first days of indeterminate sentencing, judges have taken into account, in choosing a sentence, information not established by a jury's verdict nor admitted by the defendant. The Blakely majority acknowledged this, at least to some extent, and nobody who has participated in the federal sentencing process reasonably could deny it. The advent of sentencing guidelines thus diminished the jury's role not a whit; under guidelines schemes, as before, the jury determines guilt or innocence, and additional facts may be considered in determining the sentence.

> Sentencing guidelines did, however, reallocate the decision making authority as between the judge and the legislative branch, limiting the discretion of the former, and giving greater sway to policy decisions of the latter. One can argue the wisdom of guidelines sentencing in general or of the specific decisions incorporated into the existing federal guidelines in particular, but it is hard to find support for the proposition that the Constitution requires the legislature to cede policy making authority in this arena to judges. It is harder still to argue that this must be done in the name of preserving the role of the jury.

(emphasis and supporting authorities omitted).  The government respectfully objects to any determination by the Court that Blakely applies to the Sentencing Guidelines pending the Supreme Court's decision in Fanfan and Booker.

States v. Einstman, 2004 U.S. Dist Lexis 13166 (S.D.N.Y. 2004) (McMahon) (in upholding government's Blakely severability argument, court stated that sentences imposed with no upward enhancements "make a mockery of the real ("not relevant") statutory maxima that have been set by the Legislative Branch and effectively eviscerate Congress's expressed intention that, to use this case as an example, a schemer who defrauds his employer be eligible for as much as five years in prison").

Assuming that the Court chooses not to reconsider its previously expressed Blakely views, it nevertheless must reject the defendant's argument that the applicable "statutory maximum" is now 87 months.  That argument ignores that the defendant pled guilty to 10 drug trafficking charges and that the resulting "statutory maximums" (however they are calculated under Blakely) must be aggregated through consecutive sentences to achieve the applicable "total punishment." See U.S.S.G. § 5G1.2(d).  In the alternative, the government suggests that the appropriate remedy in this case is to convene a sentencing jury and give the defendant the remedies he claims that he was denied. Finally, even if the court rejects every other argument that the government has made, it should conclude that the

9

applicable statutory maximum is 115 months based on the
facts the defendant admitted at his plea.

### 1. Even if this court applies Blakey to the guidelines, it is obligated to impose consecutive sentences to achieve the total punishment in this case

As perplexing as <u>Blakely</u> may for sentencing in many
federal criminal cases, it simply does not drive the
decision here.  Because Sanchez plead guilty to 10 separate
drug offenses,  this Court is required to run those
sentences consecutively to avoid exceeding the "statutory
maximum" (however that term may be construed) as to any
particular count if the Guidelines remain constitutional.
Again, assuming that <u>Blakely</u>  applies to the Guidelines in
exactly the manner that Sanchez claims, the Court still is
required to impose the same 210 month total sentence by
running the defendant's sentences consecutively on as many
of his ten counts of conviction as is required to achieve
the correct guideline result.  <u>See</u> U.S.S.G. § 5G1.2(d) ("if
the sentence imposed on the count carrying the highest
statutory maximum is less than the total punishment, then

the sentence imposed on one or more of the other counts
*shall* run consecutively...").[9]

The Sixth Amendment guarantees criminal defendants
certain procedural rights in "criminal prosecutions," such
as the right to counsel, the right to a jury trial, and the
right to a speedy and public trial.  U.S. Const., amend. VI.
These rights only arise upon the initiation of adversary
judicial proceedings against an individual, and are "offense
specific" — that is, tied to a particular charge of criminal
conduct brought against a defendant.  The Supreme Court has
held that the Sixth Amendment right to counsel "cannot be
invoked once for all future prosecutions, for it does not
attach until a prosecution is commenced," and hence the
Sixth Amendment does not preclude government agents from
speaking with a criminal defendant with respect to offenses
with which he is not presently charged.  <u>McNeil v.
Washington</u>, 501 U.S. 171, 175 (1991); <u>Texas v. Cobb</u>, 532
U.S. 162, 168 (2001) (re-affirming that Sixth Amendment

---

[9] Obviously, the correctness of the 210 month sentence previously imposed assumes that the Court confirms its prior drug weight determinations notwithstanding the attribution issue regarding the two kilos of heroin previously associated with Velasquez. It should, given all of the corroborative evidence regarding the scope of Sanchez' trafficking.

right to counsel is offense specific, with no "exception for crimes that are 'factually related' to a charged offense").

In the wake of <u>Apprendi</u>, nearly every circuit court of appeals has held that a criminal defendant's Sixth Amendment right to jury trial is likewise "offense specific," in that it relates to individual counts of charged criminal conduct. As a result, they have concluded that under the Sixth Amendment, a district court can and should run sentences on multiple counts *consecutively* to achieve the total punishment dictated by the Guidelines, so long as the sentence on any *individual* count does not exceed the statutory maximum for that count.

The First Circuit applied section 5G1.2(d) against an <u>Apprendi</u> challenge in <u>United States v. Saccoccia</u>, 2002 WL 1734169 (1st Cir. 2002).  In <u>Saccoccia</u>, the defendant was sentenced to 660 years in prison following his conviction on money laundering and other charges relating to his leadership of a large drug organization.  To achieve that sentence, the district court imposed consecutive sentences. On collateral review, the First Circuit rejected the claim that the stacking of the counts of conviction to achieve the total sentence violated <u>Apprendi</u>. <u>Id</u>. at 4.  ("<u>Apprendi</u>

12

poses no bar... to the imposition of consecutive sentences under § 5G1.2(d), even when 'the total punishment exceeds the highest statutory maximum on any particular count.'").

The Second Circuit reached the same result in United States v. White, 240 F.3d 127, 135-36 (2nd Cir. 2001). There, the district court also sentenced a defendant to the statutory maximum on each of multiple counts of drug offenses, and ran those sentences consecutively to the extent necessary to reach the total punishment dictated by the Guidelines. The Second Circuit also affirmed against an Apprendi attack, holding that Apprendi principles were not violated because: "the district court did not exceed the maximum for any individual count.  It cannot therefore be said that, as to any individual count, the court's findings resulted in the imposition of a greater punishment than was authorized by the jury's verdict." Id. at 135.  In reaching this conclusion, the  Court also noted that, "perhaps more important, we are aware of no constitutionally cognizable right to concurrent, rather than consecutive, sentences." Id.  In essence, the Court of Appeals rejected the notion that "use of section 5G1.2(d) of the Sentencing Guidelines to run [a defendant's] sentences consecutively rather than concurrently 'effectively increased the penalty to which

13

[that defendant] was subject'" for purposes of Apprendi.

Id.  See also United States v. McLean, 287 F.3d 127 (2d Cir.

2002) (declining to remand or modify judgment where

defendant failed to preserve Apprendi claim that sentence on

each individual count exceed statutory maximum, because

total effective sentence could have been imposed by running

shorter sentences on each count consecutively); United

States v. Blount, 291 F.3d 201, 213-14 (2d Cir. 2002)

(same), cert. denied, 537 U.S. 1141 (2003).[10]  See generally

---

[10] Other cases reaching the same result include United States v. Stokes, 261 F.3d 496, 500-01 (4th Cir. 2001), cert. denied, 535 U.S. 990 (2002); United States v. McWaine, 290 F.3d 269, 276 (5th Cir.), cert. denied, 537 U.S. 921 (2002); United States v. Page, 232 F.3d 536, 544-45 (6th Cir. 2000); United States v. Hernandez, 330 F.3d 964, 982-84 (7th Cir. 2003), cert. denied, 124 S. Ct. 1599 (2004); United States v. Diaz, 296 F.3d 680, 683-85 (8th Cir.) (en banc), cert. denied, 537 U.S. 940 (2002); United States v. Buckland, 289 F.3d 558, 570-71 (9th Cir.) (en banc), cert. denied, 535 U.S. 1105 (2002); United States v. Lott, 310 F.3d 1231, 1242- 43 (10th Cir. 2002), cert. denied, 538 U.S. 936 (2003); United States v. Davis, 329 F.3d 1250, 1253-54 (11th Cir.), cert. denied, 124 S. Ct. 330 (2003); United States v. Lafayette, 337 F.3d 1043, 1050 (D.C. Cir. 2003).

The Third Circuit has issued conflicting opinions as to whether stacking is mandatory under U.S.S.G. §5G1.2(d).  Compare United States v. Velasquez, 304 F.3d 237, 241 (3d Cir. 2002) (stacking of lower Apprendi sentences is within sentencing court's discretion; approving court's decision not to stack sentences on substantive and conspiracy counts), cert. denied, 538 U.S. 939 (2003) and United States v. Chorin, 322 F.3d 274, 278 (3rd Cir. 2003) (Apprendi is not implicated by the District Court's imposition of consecutive sentences pursuant to U.S.S.G. § 5G1.2(d)) with United States v. Jenkins, 333 F.3d 151, 155 (3d Cir.) (stacking of lower Apprendi sentences is mandatory, not citing Velasquez), cert. denied, 124 S. Ct. 350 (2003).  This conflict is not an issue here, because the 210-month sentence the court imposed can be supported based on the distribution charges that Sanchez plead guilty to alone.  See also United States v. Kapev,199 F.3d 596 (2nd Cir. 1999)(per curiam)(rejecting claim that imposition of offense for conspiracy and substantive counts was unconstitutional); Garrett v. United States, 471 U.S. 773 (1985) (there is a presumption that, when Congress creates two distinct offenses, it intends to permit cumulative sentences).

<u>Whalen v. United States,</u> 445 U.S. 684, 688 (1980) (authority to constitutionally impose multiple punishments is resolved by determining what punishment the legislative branch has authorized).

Because <u>Blakely</u> is nothing more than an extension of <u>Apprendi</u>'s principles,[11] these cases would remain good law even if <u>Blakely</u> is ultimately applied to the Federal Sentencing Guidelines.  Hence, the only other step needed to sentence the defendant on remand is to determine, under the defendant's own interpretation of <u>Blakely</u>, what the upper end of the Guidelines range would be for each of his counts of conviction; to aggregate those upper ends; and then to determine whether such an aggregate statutory maximum exceeds the total punishment called for by the Guidelines based on the findings this Court has already made.  <u>See</u> <u>United States v. Garcia-Torres</u>, 341 F.3d 61, 74 (1st Cir. 2003) ("Like every other circuit that has considered the issue, we have previously stated that the language of § 5G1.2(d)--indicating that sentences 'shall run

---

[11]  <u>E.g.</u>, <u>In re Dean,</u>  2004 WL 1534788, at *3 (11 Cir. July 9, 2004) ("<u>Blakely</u>... is based on an extension of <u>Apprendi</u> ); <u>Patterson v. United States,</u>, 2004 WL 1615058, at *4 n. 3 (E.D.Mich. July 2, 2004) ("<u>Blakely</u> is in fact an extension of the rule announced in <u>Apprendi v. New Jersey</u>" ); <u>United States v. Stoltz</u>, 2004 WL 1619131, at *2 (D.Minn. July 19, 2004) ("In <u>Blakely</u>, the Court extended its holding in <u>Apprendi v. New Jersey</u>.").

consecutively'--is mandatory in order to achieve, to the greatest extent possible, a combined sentence 'equal to the total punishment.'").[12]

Any application of these principles demonstrates that the 210-month sentence originally entered in this case should be reimposed.  As set forth above, Sanchez pled guilty to 10 separate charges of drug trafficking.  Nine of those charges were simple distribution counts that, accepting the defendant's view of <u>Blakely</u>, carry a "total statutory maximum" of 27 months.[13] Hence, section 5G1.2(d) of the Guidelines requires the imposition of consecutive sentences in this case up to a maximum of 243 months based on the distribution counts alone without violating the defendant's <u>Apprendi/Blakely</u> rights. [14]   <u>E.g.</u>, <u>United States v. Saccoccia</u>, 58 F.3d 754, 787 (1st Cir. 1995) ("the court below possessed the power--*indeed, the*

---

[12] Again, this conclusion assumes that the Court will confirm its prior drug weight determinations notwithstanding the attribution issue on the 2 kilograms of heroin.

[13] The indictment alleged that each of the distribution counts involved heroin, a Schedule I controlled substance. Assuming that the defendant must be given credit for acceptance of responsibility under these calculations and that his CHC is IV, <u>see</u> PSR at ¶ 100, <u>but see</u> discussion at pp. 16-20, <u>infra</u>, the resulting guideline range is 21-27 months *for each count*. <u>See</u> U.S.S.G. §2D1.1. Using the same principles to the conspiracy count produces a total guideline range of 87 months just for it. <u>Id</u>.

[14] Were the Court to conclude that the 2 kilograms of heroin was improperly attributed to Sanchez, the resulting  guideline range would be 135-168 months.

*responsibility*--to impose a series of consecutive sentences effectuating the clearly expressed command of U.S.S.G. § 5G1.2.") (emphasis supplied).

### 2. **Blakely does not prohibit judicial fact finding so long as the resulting sentence does not exceed the "applicable statutory maximum"**

Even if the Court declines to apply U.S.S.G. §5G1.2(d) in this case, the defendant's calculation of his "statutory maximum" is still wrong.  Because <u>Blakely</u> does not preclude the Court from finding facts so long as the resulting sentence falls within the applicable "statutory maximum," justified by the facts admitted by the defendant, the true <u>Blakely</u> maximum based is in actuality 115 months even if the defendant's <u>Blakely</u> interpretation is otherwise correct.

Consideration of this issue must also begin with <u>Apprendi</u>.  It held that: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 430 U.S. at 490.  Subsequent cases have made clear that <u>Apprendi</u> is a limitation on a particular result (i.e, the imposition of a sentence that exceeds the prescribed statutory maximum) rather than any sentencing procedures.  Thus, after

17

Apprendi, courts remained free to engage in judicial factfinding so long as the ultimate sentence did not exceed the maximum sentence established by Congress.  E.g., United States v. Caba, 248 F.3d 98, 101 (1st Cir. 2001) ("Apprendi does not prohibit a sentencing court from making factual findings that increase a defendant's sentence (including findings as to drug type and quantity) as long as the sentence imposed is within the default statutory maximum."); United States v. Downs-Moses, 329 F.3d 253, 262 (1st Cir. 2003) (when a sentence is less than the statutory maximum, "Apprendi is irrelevant").

At most, the holding in Blakely is nothing more that a refinement (albeit a potentially important one) of Apprendi's concept of statutory maximums.  See cases cited in footnote 9.  Although Blakely used the Washington State sentencing guideline scheme rather than the underlying statute in determining the statutory maximum, it did not declare the separate determination of the applicable Washington State sentencing guideline range to be per se unconstitutional.  Because it was the length of the sentence that offended the Sixth Amendment in Blakely, that decision, like Apprendi, is also not a constitutional proscription against judicial factfinding so long as the "statutory maximum" is not exceeded.

In <u>Blakely</u>, the Supreme Court addressed the Sixth
Amendment rights of a criminal defendant in the context of
various Washington state criminal statutes.  It held that:
"[T]he '<u>statutory maximum</u>' for <u>Apprendi</u> purposes is the
<u>maximum sentence</u> a judge may impose solely on the basis of
the facts reflected in the jury verdict or admitted by the
defendant."  <u>Blakely v. Washington</u>, 124 S. Ct. 2531, 2537
(2004).  The  Court further stated:  "[T]he relevant
'<u>statutory maximum</u>' is not the maximum sentence a judge may
impose after finding additional facts, but the maximum he
may impose <u>without</u> any additional findings."  <u>Id.</u>

In <u>Blakely</u> there was no finding by a jury.  The <u>highest</u>
sentence permitted under the Washington sentencing guideline
statutes based on admissions by the defendant was 53 months.
<u>Id.</u> at 2535.  Accordingly, the Supreme Court held that any
sentence above the 53-month statutory maximum violated the
defendant's Sixth Amendment right to a jury trial.  <u>Id.</u> at
2536-38.  Conversely, any sentence below 53 months would
have been constitutional under <u>Blakely</u> even if it had been
the product of judicial factfinding.  <u>See id.</u> at 2540 ("By
reversing the judgment below, we are not, as the State would
have it, 'find[ing] determinate sentencing schemes
unconstitutional.'").  <u>See also</u> <u>United States v. Jarrett</u>,
334 F.Supp. 2d 810, 820 (W.D. Pa 2004) (court was not
precluded from making judicial findings so long as resulting
sentence did not exceed the high end of the guideline range

19

for the Base Offense Level resulting from the facts admitted
to by the defendant); United States v. Johns, 2004 WL
2053275, *6 (M.D.Pa. 2004) (Once the Blakely statutory
maximum is established, a sentencing court may apply the
guidelines "as they were intended as long as [the resulting
sentence] does not exceed the 'statutory maximum,'").

Application of these principles here demonstrate that
the statutory maximum in this case is in fact substantially
higher than the 87 months alleged by the defendant.  In the
plea colloquy, the defendant admitted that he was
responsible for distributing at least 100 grams of heroin.
Plea Tr. At 31.  Based on the defendant's CHC of IV, this
means that, by pleading guilty to the conspiracy charged in
the indictment, the defendant faced a maximum unenhanced
guideline sentence of 115 months.  See Sentencing
Guidelines, Part V (Sentencing Table) for Level 26, CHC IV.

Any argument that this statutory maximum must be
reduced to reflect a 3-level reduction for acceptance of
responsibility should be rejected.  By pleading guilty, a
defendant is not automatically entitled to a any reduction
for acceptance of responsibility. See U.S.S.G. §3E1.1,
Application note 3 ("A defendant who enters a guilty plea is
not entitled to a sentencing reduction under this section as
a matter of right.").  See also United States v.

20

Ocasio-Rivera, 991 F.2d 1,4 (1st Cir.1993) ("The ultimate question under section 3E1.1 is not whether the defendant has uttered 'a pat recital of the vocabulary of contrition,' but whether he has accepted full responsibility for his part in the offense of conviction by demonstrating 'candor and authentic remorse.' "); United States v. Austin, 948 F.2d 783, 787 (1st Cir. 1991)(affirming denial of acceptance despite guilty plea).  Because the reduction also cannot be granted until the time of sentencing and until the defendant affirmatively shows he is entitled to it, the Blakely statutory maximum cannot take acceptance of responsibility into account.  See United States v. Morillo, 8 F.3d 864, 865 (1st Cir.1993) (defendant bears the burden of proving entitlement to decreases in the offense level, including downward adjustments for acceptance of responsibility).[15]

---

[15] Any argument that acceptance was not an issue in this case based on the timing of the plea ignores the fact that there was no guarantees made at the plea colloquy regarding any acceptance of responsibility deduction and that there could not have been given the many issues that could arise between the plea and sentencing that could affect the defendant's ability to prove that he had accepted responsibility for his crimes. E.g., United States v. Olvera, 954 F.2d 788, 793 (2d Cir. 1992) (refusing to award acceptance of responsibility based on smuggling marijuana into jail while awaiting sentencing); United States v. Reed, 951 F.2d 97, 99-100 (6thCir. 1991) (refusing to award acceptance of responsibility based on continued credit card fraud while in jail awaiting sentencing); United States v. Cross, 900 F.2d 66, 70 (6th Cir. 1990) (refusing to award acceptance of responsibility based on defendant's refusal to provide financial information); U.S. v. De Felippis, 950 F.2d 444, 447 (7th Cir. 1991)  (refusing to award acceptance of responsibility based on false information given to a probation officer).  The decided cases also make clear that Blakely does not apply to guideline reductions. E.g., United States

### **3.  If there has been a Blakely violation, the government is entitled to a sentencing jury if the Guidelines are in fact severable**

Even if the Court rejects all of the foregoing, the defendant is still not entitled to the windfall he seeks at least until a sentencing jury concurs.  Such a jury would be fully able to provide Sanchez with his full panoply of Sixth Amendment rights while at the same time enabling the Court to effect Congress's determination that violent drug traffickers receive appropriate sentences.  See Blakely at *7 ("This case is not about whether determinate sentencing is constitutional, only about how it can be implemented in a way that respects the Sixth Amendment.").  See generally United States v. DiFrancesco, 449 U.S. 117, 135 (1980) ("The Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner.").

Undoubtedly, the defendant will claim that the Court cannot convene a sentencing jury in this case because it is

_____

v. Giluardo-Parra,  2004 WL 2369936, *5 (D.Utah. October 20, 2004) ("Blakely does not apply to credit for acceptance of responsibility because nothing prevents a judge from making factual determinations about the applicability of reductions in sentences").

not authorized to do so.  Expected arguments include:

(i) that sentencing juries are generally unlawful because
they are not authorized by statute or other rule; and (ii)
that a sentencing jury could not in any event be convened in
this case because the government did not allege the firearm,
role and drug weight over 100 grams o heroin in the
indictment.

Any effort to avoid a sentencing jury based on the
government's failure to allege the enhancement issues in the
indictment must be rejected.  Blakely is a Sixth Amendment
case concerned with protecting a defendant's right to a jury
trial.  Because in federal cases, jury trial rights are
distinct from a defendant's Fifth Amendment right to be
indicted by a grand jury, there is simply no reason to
assume that the right to have guideline issues in federal
cases decided by a jury beyond a reasonable doubt is
conterminous with the Fifth Amendment's requirement that a
case proceed by way of indictment as to each and every such
factor.[16]

---

[16] The Indictment Clause of the Fifth Amendment serves two functions.  It first
acts as a check on prosecutorial power by entitling "a defendant to be in jeopardy only
for offenses charged by a group of his fellow citizens acting independently of either the
prosecutor or the judge."  United States v. Field, 875 F.2d 130, 133 (7th Cir. 1989) (citing
Stirone v. United States, 361 U.S. 212, 217-19 (1960)).  See also United States v. Cotton,
122 S.Ct. 1781, 1786 (2002).  It also "entitles a defendant to be apprized of the charges

The appropriateness of convening a sentencing jury for so called "Blakely" facts (i.e., facts which permit the imposition of a higher sentence under the guideline regime with its many gradations) as opposed to "Apprendi" facts (only those few facts that increase a sentence beyond the maximum specified for the crime by the Legislature) is also consistent with the case law and common sense if the Guidelines are severable.  On the one hand, Apprendi made clear that the Constitution required only facts necessary to define the crime (i.e, the maximum punishment permitted by statute) be included in the indictment and proven to the jury at trial beyond a reasonable doubt.  Apprendi, 530 U.S. at 483n. 10 ("The judge's role in sentencing is constrained at its outer limits by the facts alleged in the indictment and found by the jury. Put simply, facts that expose a defendant to a punishment greater than that otherwise legally prescribed were by definition "elements" of a separate legal offense.").  By contrast, nothing in the

---

against him, so that he knows what he must meet at trial." Field, 875 F.2d at 133.  See also Apprendi, 530 U.S. at 478 ("The defendant's ability to predict with certainty the judgment from the face of the felony indictment flowed from the invariable linkage of punishment with crime.").  "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same  offense." Hamling v. United States, 418 U.S. 87, 117 (1974).

majority opinion in <u>Blakely</u> contains a similar requirement.[17]   Because <u>Blakely</u> itself does not encompass the indictment clause, a sentencing jury is appropriate. <u>Compare also</u> <u>Harris v. United States</u>, 122 S. Ct. 2406, 2417-18 (2002) (a crime has not been properly alleged "unless the indictment and the jury verdict include all the facts to which the legislature [has] attached the maximum punishment").

The absence of any indictment requirement is also consistent with current federal practice and the requirement that Presentence Reports timely notify the defendant of the specific facts on which his sentencing is likely to depend. <u>See</u> 18 U.S.C. § 3552; Federal Rule of Criminal Procedure 32. <u>See also</u> <u>Russell v. United States</u>, 369 U.S. 749, (1962) (principal issue in judging the sufficiency of an indictment is whether the indictment adequately alleges the elements of the offense and fairly informs the defendant of the charge); discussion at footnote 4, <u>supra</u>. Under Federal Rule of Criminal Procedure 32(d), the United States Probation Office

---

[17] Although Justice O'Connor's dissent in <u>Blakely</u> assumed that an indictment is required in all guideline cases, that assumption is not based on anything in the majority opinion of the court.  <u>See</u> <u>Blakely</u> 124 S.Ct. at 2543 (dissenting opinion of Justice O'Connor's stating that "facts that historically have been taken into account by sentencing judges to assess a sentence within a broad range--such as drug quantity, role in the offense, risk of bodily harm--all must now be charged in an indictment...").

is required to prepare a detailed Presentence Report ("PSR")
in every case which, among other things, calculates the
defendant's offense level, his criminal history category,
and the resulting sentencing guideline range.  Id.  Because
Rule 32(f) also requires the PSR to be disclosed
sufficiently before sentencing to enable the defendant to
object, the PSR fulfills any constitutional notice
requirement, thereby demonstrating that an indictment is not
otherwise required.[18]  See United States v. Harris, 332
F.Supp. 2d 692, 704 (D.N.J. 2004) (Government's Notice of
Additional Sentencing Factors satisfied Blakely's
requirement for reasonable written notice of the charges,
particularly where there was no surprise to the defendant).

     The second argument that has been made to courts
considering this issue is that the absence of any statutory
provision specifically authorizing a sentencing jury.
Although this issue prompted both the Croxford and Shamblin
courts to conclude that a sentencing jury could not be
convened, those opinions misconstrue the applicable law if,
as this Court has previously concluded, the guidelines are

---

[18] Permitting the PSR to fulfill the notice function if the government chooses to
use it in this manner will also avoid the need for repeated superseding indictments in
cases where individual sentencing factors are developed as the case progresses. See, e.g.,
United States v. Green,  2004 WL 1381101 (D.Mass 2004) (Young, C.J.).

severable after <u>Blakely</u>.  Hence, a sentencing jury should be convened in this case to give Sanchez what he is asking for.

Both <u>Croxford</u> and <u>Shamblin</u> rejected the government's suggestion that a sentencing jury be permitted to implement a defendant's <u>Blakely</u> rights.  In doing do, they concluded that the absence of any express authority for such a jury required that the government's request be denied.  <u>See</u> <u>Croxford</u>, 324 F.Supp 2d. at 1242 ("As to the first option--convening a sentencing jury--the court finds that the statutes do not authorize such an approach"); <u>Shamblin</u>, 323 F.Supp 2d 757, 767 (D. W. Va 2004) (adopting <u>Croxford</u> approach).

These cases turn the applicable law on its head.  Because the correct test is whether there is any statue or other legislative pronouncement that *prohibits* a sentencing jury from being convened, the <u>Croxford/Shamblin</u> analysis on this issue is flawed both in its reasoning and in its result.

This conclusion flows from the Court's prior rulings that the Guidelines are severable and from the fundamental maxim of constitutional adjudication that requires this court to construe 18 U.S.C. §3553(b) and other statues

regarding sentencing procedures to be constitutional wherever possible.  Under familiar principles of constitutional adjudication, this Court is required to make every effort to read the applicable statutes in harmony with the Sixth Amendment: "every reasonable construction must be resorted to in order to save a statute from unconstitutionality."  Hooper v. California, 155 U.S. 648, 657 (1895).  See also Salinas v. United States, 522 U.S. 52, 59-60 (1997) (counseling courts to construe statutes to avoid constitutional infirmity).  Thus, "if an otherwise acceptable construction of a statute would raise serious constitutional problems, and where an alternative interpretation of the statute is 'fairly possible,' [this court is] obligated to construe the statute to avoid such problems."  INS v. St. Cyr, 533 U.S. 289, 299-300 (2001) (quoting Crowell v. Benson, 285 U.S. 22, 62 (1932)).  Accord, Veiga v. McGee, 26 F.3d 1206, 1212 (1st Cir. 1994) ("In the absence of clear legislative intent, we will not adopt an interpretation of a statute that would render it constitutionally suspect.").[19]

---

[19]  The party challenging a statute bears the burden of demonstrating its unconstitutionality.  Lujan v. G & G Fire Sprinklers, Inc., 532 U.S. 189, 198 (2001).  All acts of Congress are also presumed to be a constitutional exercise of legislative power until the contrary is clearly established. E.g., Gibbs v. Babbitt, 214 F.3d 483, 504 (4th Cir.

The First Circuit has dealt with comparable issues in passing on post-Apprendi efforts to remedy defects involving drug weight by including drug weight allegations in indictments.  United States v. Collazo-Aponte, 281 F.3d 320, 325 (1st Cir. 2002)(post-Apprendi, "all facts (other than prior convictions) that set the maximum possible punishment under § 841(b) must be established beyond a reasonable doubt by the same body that determines culpability under § 841(a)").  In response to Apprendi, indictments under the controlled substances statutes routinely alleged drug quantity to ensure compliance with both the Fifth and Sixth Amendments.  In response, defendants argued that this practice (i.e., giving defendants more process in order to respect new constitutional rights) was unconstitutional because nothing in Title 21 authorized including drug weight allegations in indictments.

These efforts to declare the drug statutes unconstitutional in light of Apprendi consistently and uniformly failed.  In Collazo-Aponte, 281 F.3d at 325, for example, the First Circuit rejected exactly this argument based on its determination that there was nothing in section

_____

2000).

29

841 that required all drug quantity determinations to be
made by the judge.  The court noted that section 841 "is
silent as to who makes [drug quantity] findings and under
what burden of persuasion." Id.  Because the Court could
find nothing in section 841 that explicitly precluded the
procedural protections required by Apprendi, it concluded
that the Constitution now dictated that drug quantity
determinations that increase the statutory maximum must be
included in the indictment and proven to the jury beyond a
reasonable doubt and that this was permissible under the
statute.  Collazo-Aponte, 281 F.3d at 325 ("Apprendi simply
makes the jury the decisionmaker and the reasonable-doubt
standard the proper burden for facts that increase the
penalty beyond the applicable statutory maximum.").  Every
other circuit that addressed this issue reached the same
result and thus concluded that such constitutional remedies
are proper so long as they do not conflict with the
governing statutes.  E.g., United States v. Candelario, 240
F.3d 1300, 1311 n. 16 (11th Cir.)cert. denied, 533 U.S. 922
(2001) (characterizing as "without merit" a facial challenge
to §§ 841 and 846 under Apprendi), ; United States v.
Slaughter, 238 F.3d 580, 582 (5th Cir. 2000), cert. denied,
532 U.S. 1045 (2001) ("[w]e see nothing in the Supreme Court

decision in Apprendi that would permit us to conclude that
21 U.S.C. §§ 841(a) and (b), 846, and 860(a) are
unconstitutional on their face"),; United States v.
Cernobyl, 255 F.3d 1215, 1218-19 (10th Cir. 2001) (rejecting
an Apprendi-based facial challenge to § 841); United States
v. McAllister, 272 F.3d 228 (4th Cir. 2001) (same); United
States v. Kelly, 272 F.3d 622 (3rd Cir. 2001) (same); United
States v. Martinez, 253 F.3d 251, 256 n. 6 (6th Cir. 2001)
(same); United States v. Woods, 270 F.3d 728, 729-30 (8th
Cir. 2001) (same).  Just as these cases concluded that the
procedural protections required by Apprendi did not
invalidate section 841 because they were not contemplated by
Congress, this court must, based on its prior severability
analysis, conclude that sentencing juries are permissible in
future federal criminal cases to remedy any constitutional
issues raised by Blakely because sentencing juries are not
expressly prohibited.  See also Collazo-Aponte, 281 F.3d at
325  ("How statutes are ... implemented to fulfil
[Apprendi's] requirement is a subject to which the
Constitution does not speak") (quoting Brough, 243 F.3d at
1079).

      To date, various post-Blakely decisions have recognized
sentencing juries as an appropriate and constitutionally

valid procedure.  In <u>United States v. Ameline</u>, 376 F.3d 967,
983 (9th Cir. 2004), for example, the Ninth Circuit stated
that "should the government seek to obtain a higher sentence
for the offense of conviction, the district court [on
remand] may convene a sentencing jury to try the drug
quantity and firearm issues, which, if proven beyond a
reasonable doubt, may be used to increase Ameline's
sentence." In <u>United States v. Booker</u>, 375 F.3d 508 (7th
Cir. 2004) the Seventh Circuit also remanded a <u>Blakely</u>
appeal for a potential hearing in which it noted that the
defendant would be entitled to a sentencing jury.  <u>Id</u>. at
513 ("There is no novelty in a separate jury trial with
regard to the sentence, just as there is no novelty in a
bifurcated jury trial, in which the jury first determines
liability and then, if and only if it finds liability,
determines damages."). <u>See also</u> <u>United States v. Green</u>, 2004
WL 1381101,*37 (D.Mass 2004) (Young, C.J.)(suggesting that
sentencing juries might be feasible alternative to resolve
due process issues).  Because a sentencing jury can remedy
Sanchez' complaints about the process he has been afforded
while also addressing the government's interest in seeking
a sentence that properly reflects the severity and
persistence of both the fact of Sanchez' crimes and the

manner in which he committed them, a sentencing jury should be convened if the Court concludes that <u>Blakely</u> is otherwise applicable.

### CONCLUSION

This Court decides should reject Sanchez' invitation to indiscriminately extend <u>Blakely</u> in a piecemeal manner.  Any determination by the Court that <u>Blakely</u> applies to the Federal Sentencing Guidelines necessarily means that the guidelines are invalid in their entirety as they apply to this case. In their stead, the government requests that the Court impose a sentence on Chepiel Sanchez within the applicable 60-480 month range that it considers to be just after taking due regard for the 210-262 month range the Court previously concluded should apply.

If the Court declines to revisit its prior determination that Guidelines are applicable in this case even if <u>Blakely</u> applies, then the same 210 month sentence previously entered should be reimposed.  The fact that Sanchez pled guilty to 10 separate drug charges requires that consecutive sentences be used to implement the mandatory provisions of U.S.S.G. §5G1.2(d) and demonstrate that this is really not a <u>Blakely</u> case at all.

If the Court declines to apply section 5G1.2(d) in the circumstances of this case, the government requests that it convene a sentencing jury to give the defendant the process he believes to be due or, in the alternative, that it sentence the defendant to 115 months in jail, which the government asserts is the correct "<u>Blakely</u>" statutory maximum that would be applicable in this case.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:

Dated: October 31, 2004

<u>/s John A. Wortmann, Jr.</u>
JOHN A. WORTMANN, JR.
Assistant U.S. Attorney
617-748-3207